IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Constance SAAFIR, <br><br> Plaintiff, <br> v. <br><br> BAYVIEW LOAN SERVICING, LLC and <br> KML LAW GROUP, P.C., <br><br> Defendants. | Civil No. 17-3735 (RBK/JS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

Plaintiff Constance Saafir, proceeding *pro se*, brings this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The complaint alleges that Defendants Bayview Loan Servicing, LLC ("Bayview") and KML Law Group, P.C. ("KML"), improperly attempted to collect on debt relating to a foreclosure involving Saafir's property. Now before the Court is KML's Motion to Dismiss (Doc. No. 8) and Bayview's Motion to Dismiss (Doc. No. 15). As Saafir's complaint suffers from numerous deficiencies, both motions are **GRANTED**.

I. THE FACTS

On February 13, 2015, the United States Bankruptcy Court for the Eastern District of Pennsylvania granted a Chapter 7 Federal Discharge Order releasing Constance Saafir from personal liability of all debts. (Compl. ¶ 21.) Shortly after, on August 6, 2015, KML Law Group, P.C., a law firm, commenced a state court *in rem* foreclosure action on behalf of its client, Bayview Loan Servicing, LLC. (*Id.* ¶ 22.) Subsequent communications from KML are the subject of this

1

FDCPA suit. On January 21, 2016, KML sent a letter informing Saafir that KML was a debt collector attempting to collect a debt. (*Id.* ¶ 23; Ex. B.) A New Jersey state court entered judgment against Saafir on March 29, 2016 and KML subsequently sought to have a Writ of Execution enforced through the local sheriff on Saafir's property. (*Id.* ¶¶ 27-28.)

On October 7, 2016, KML sent another letter to Saafir, providing notice of a foreclosure sale scheduled for October 20, 2016. (*Id.* ¶¶ 25-26; Ex. E.) Saafir alleges the October 7, 2016 letter was false and misleading, and that the February 3, 2015 Federal Discharge Order bars KML from taking any *in rem* judicial actions, including foreclosure on Saafir's property. (*Id.* ¶¶ 27-31.) It is unclear whether anything occurred in the October 20, 2016 foreclosure sale. But a few months later, on March 13, 2017, KML sent another letter to Saafir asking to reschedule a Sherrif's sale from March 16, 2017 to May 18, 2017. (*Id.* ¶ 41; Ex. F.) This, too, is said to be false and misleading. (*Id.* ¶ 42.)

Saafir has also sued Bayview. She alleges Bayview sent to her an August 19, 2016 "Bankruptcy Notice" that had false and misleading representations. (*Id.* ¶ 63; Ex. G.) This notice explicitly states "[t]his statement is being sent to you for informational purposes only" and "should not be construed as an attempt to collect a debt against your personally." (*Id.* Ex. G.) Instead, it indicates that it concerns Bayview's "right to foreclose [its] lien" and sets forth several delinquent payments totaling $67,743.90. (*Id.*) Subsequent Notices were sent on September 20, 2016 (Ex. H); October 19, 2016 (Ex. J); November 21, 2016 (Ex. K); March 21, 2017 (Ex. L); and April 16, 2017 (Ex. N). These notices are all identical, save that the delinquent sum increased by $1,319.84 for each passing month.

In addition, Saafir identifies two other documents claimed to be false and misleading. One is a document, apparently received October 7, 2016, entitled "What Does Bayview Do With Your

Personal Information?" (the "Privacy Notice"). (Ex. I.). The Privacy Notice sets forth information consistent with its title and is in the nature of an informational pamphlet. The other is an Account Activity Statement dated April 5, 2017, which details the money owed. (Ex. M.) No other information is available in the pleadings about the Account Activity Statement.

## II. THE 12(b)(6) STANDARD

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This rule rests on the concern that considering documents outside the complaint would

prejudice the plaintiff, who would lack notice to challenge them. *Id.* However, a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (citations and quotations omitted). "Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint," it removes the risk of prejudice. *Id.* (citing *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). This exceptions seeks to prevent "the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Id.*

Finally, we note that pro se complaints must be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. DISCUSSION

#### A. The Claims Against Bayview

Saafir has sued Bayview for sending her six monthly statements (Exs. G, H, J, K, L, and N), a Privacy Notice (Ex. I), and an Account Activity Statement (Ex. M). She alleges that when Bayview sent these communications to her, it violated the FDCPA.

The FDCPA, 15 U.S.C. § 1692 *et seq.*, provides a cause of action to consumers who have been subject to "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer; (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

The FDCPA "is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013). The Act provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and then enumerates several instances which may make out a violation of the statute. 15 U.S.C. § 1692e. Among those, and as alleged against Bayview, are sections 1692e(10), 1692e(11), and 1692j(a). Section § 1692e(10) bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(11) requires a debt collector to disclose that it is collecting on a debt. And § 1692j(a) makes it unlawful to use a form to create a false belief about the identity of the collector.[1] Courts have concluded that any lender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of "the least sophisticated" debtor. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453–54 (3d Cir. 2006).

Bayview has identified serious deficiencies within Saafir's pleadings relating to Bayview's status as a "debt collector" under 15 U.S.C. § 1692a(6). The FDCPA defines a "debt collector" as

> Any person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). By contrast, "creditor" is defined as:

> Any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

---

[1] Specifically, it is "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a).

5

15 U.S.C. § 1692a(4); *see FTC v. Check Investors, Inc.*, 502 F.3d 159, 171 (3d Cir. 2007).

To plead an FDCPA claim, a plaintiff must show that a defendant is a "debt collector" under the statute. But Saafir's complaint merely provides "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678 (2009). The complaint simply does not provide sufficient facts for this Court to determine whether Bayview is a "debt collector" for purposes of the FDCPA. Saafir does not allege the principal purpose of Bayview's business, how often it collects debts, or how long it has been doing so. The sole factual basis for Saafir's claim is an unsupported allegation that "Defendant [Bayview] is a debt collector." That is insufficient, and so the claims against Bayview must be dismissed without prejudice, with leave to amend to correct this deficiency. *See also DeFazio v. Leading Edge Recovery Sols., LLC*, 2010 WL 5146765, at *2 (D.N.J. Dec. 13, 2010) (dismissing FDCPA claim without prejudice for same).

But even if Bayview is a debt collector, which we do not decide today, the monthly statements are not communications that violate the FDCPA. They do not unfairly represent, fail to disclose a material truth, instill a false belief, or otherwise deceive a consumer into misinterpreting their contents. A brief review of each of these statements proves as much. As relevant, each monthly statement has the following language:

Bankruptcy Notice

> Our records reflect that you are presently a debtor in an active bankruptcy case or you previously received a discharge in bankruptcy. This statement is being sent to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally. However, we retain our rights under the security instrument, including the right to foreclose our lien.

(Exs. G, H, J, K, L, and N.) This plainly establishes the nature of the monthly statements and flatly states that it does not seek to recover on a debt; rather, it puts the recipient on notice of a potential

foreclosure action. We note, furthermore, that federal law *mandates* that mortgage servicers send borrowers periodic statements. The Truth in Lending Act, 15 U.S.C. § 1638(f), as implemented by 12 C.F.R. § 1026.41, requires that "[a] servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement." 12 C.F.R. § 1026.41(a)(2). The FDCPA does not impose liability for compliance with other federal law. In short, the statements do not seek to recover on a debt—they just provide notice—and were also sent pursuant to federal law. As there is no plausible way to amend the pleadings to withstand future dismissal, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002), we dismiss with prejudice. *See also Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 589 (D.N.J. 2016) (dismissing claims with prejudice on the same basis).

Finally, we turn to the other items identified by Saafir. The Privacy Notice (Ex. I) has nothing whatsoever to do with the collection of a debt and is therefore not cognizable under the FDCPA. We therefore dismiss the claims associated with the Privacy Notice with prejudice. Lastly, we examine the Account Activity Statement (Ex. M.) Although there is no indication that the act of sending this document was an abusive, deceptive, or unfair debt collection practice, the lack of information surrounding the document prevents this Court from concluding that amendment would be futile. At this juncture we dismiss without prejudice, with leave to amend.

To sum up, all claims against Bayview save those involving the Account Activity Statement (Ex. M.) are dismissed with prejudice. As for the Account Activity Statement, Saafir shall have leave to amend the complaint against Bayview to correct the deficiencies identified herein.

7

### B. The Claims Against KML

KML's first substantive argument is that the absolute immunity of the "litigation privilege" prevents this case from going forward. Lawyers have absolute immunity with respect to "statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto." *Fenning v. S. G. Holding Corp.*, 47 N.J. Super. 110, 117 (App. Div. 1957). "The absolute privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995) (citation and quotation marks omitted). The privilege has been held to apply "even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations." *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 588 (2006). A clear purpose of the privilege is to ensure the smooth operation of legal proceedings, unhindered by lawyerly worries that zealous advocacy could result in personal liability.

We are skeptical that the litigation privilege is expansive enough to cover all communications made by a lawyer to unrepresented individuals, however connected those statements may be to litigation. The communications here do not appear to be made in even "quasi-judicial" proceedings, and would therefore fall outside the privilege. But we need not resolve that question today, for this is an FDCPA action and "[t]he application of the New Jersey litigation privilege does not absolve a debt collector from liability under the FDCPA." *Allen ex rel. Martin v. LaSalle Bank*, N.A., 629 F.3d 364, 369 (3d Cir. 2011). Even if we assume KML is correct that the privilege applies to these facts, as a matter of law the FDCPA preempts the privilege. *Id.* (citing *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007) ("common law immunities

8

cannot trump the [FDCPA]'s clear application to the litigating activities of attorneys.")). KML's argument fails. The litigation privilege has no currency in an FDCPA action.

We turn to KML's last argument: that Saafir's bankruptcy discharge does not prohibit a lender from pursuing a foreclosure action. We agree. Chapter 7 liquidation "extinguishes *only* 'the personal liability of the debtor . . . a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting 11 U.S.C. § 524(a)(1)) (internal citation omitted) (emphasis in original). As a matter of law, KML had the right to seek foreclosure on behalf of its client, Bayview, after Chapter 7 bankruptcy. Although KML's briefing fails to so much as cite the FDCPA, it is clear that this argument is directed toward Saafir's claims under 15 U.S.C. § 1692e(5), which makes unlawful "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." Saafir concedes she was in default and so, as a matter of law, KML had the right, acting on behalf of its client, to commence foreclosure proceedings or provide notice that it will. Because the FDCPA does not functionally immunize a debtor who has declared bankruptcy from foreclosure proceedings, Saafir's claims under § 1692e(5) are dismissed with prejudice.

Saafir's complaint also brings claims against KML under 15 U.S.C. §§ 1692e(10), 1692e(11), and 1692j(a). As before, KML has not identified which of these claims should be dismissed. But although KML has manifestly failed to carry its burden of persuasion, we will address these claims in the interest of judicial economy. Simply put, they are all dismissed. The documents provided to the Court are of three varieties, none actionable. The first is a Notice of Default relating to Saafir's mortgage (Ex. B.) The second provides notice of a sheriff's foreclosure sale. (Ex. E.) The last is a letter requesting postponement of a later sheriff's foreclosure sale. (Ex. F.) Even assuming these communications fall within the scope of the FDCPA's protections for

communications from debt collectors, the documents are, by any objective metric, neither false nor misleading representations. Saafir does not deny the truth of the letters' contents or that a judgment was entered against her that permitted foreclosure on her property. Rather, she asserts KML simply had no right to communicate to her about a foreclosure. The complaint itself states that KML was enforcing a judgment, and if so, sending documents associated with a legitimate foreclosure sale cannot be termed false or misleading. Amendment of the pleadings would be futile. All claims against KML are dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, KML's motion to dismiss is **GRANTED** and Bayview's motion to dismiss is **GRANTED**. An order follows.


Dated: February 23, 2018                                /s Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge